## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| | * | **Criminal No. ELH-15-0261** |
| | * | |
| **v.** | * | **Civil No. ELH-19-0973** |
| | * | |
| **STANISLAV YELIZAROV** | * | |
| | * | |
| **Petitioner.** | * | |

## REPLY TO GOVERNMENT'S SUPPLEMENTAL BRIEFING IN OPPOSITION TO DEFENDANT'S MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. §2255

The Petitioner, Stanislav Yelizarov, by and through counsel, Sicilia C. Englert, files this Reply, addressing the issues raised in the government's post-hearing brief. (ECF 510).

### I.   Robert Waldman was ineffective for leading Mr. Yelizarov to believe there would be no further prosecutions.

The government claims in its supplemental brief that Mr. Waldman "Twice Informed the Defendant the Government was Pursuing a Murder Investigation Even if the Defendant Pled Guilty to the Unrelated Kidnapping." (ECF 510 p. 1). According to the government, the first occasion occurred when Mr. Waldman told Mr. Yelizarov about the government's murder investigation. On that occasion, Mr. Waldman testified that he informed Mr. Yelizarov about the murder investigation and asked if he was interested in a package deal. Mr. Waldman did not, however, testify that he explicitly advised Mr. Yelizarov that the government would still pursue an indictment for murder

even if he pleaded guilty to the kidnapping/robbery. *See* Tr. 1/27/22 p. 44-46. Mr. Waldman's affidavit and testimony only discuss informing Mr. Yelizarov about the murder investigation; there was no testimony that Mr. Waldman also discussed the plea agreement at that time.

The government appears to assume that informing Mr. Yelizarov of the murder investigation was a proxy for informing Mr. Yelizarov that he could be prosecuted for murder after accepting the plea agreement. But this cannot be assumed. It was not enough for Mr. Waldman to simply discuss the murder investigation without explicitly explaining that the plea agreement's meaning had changed. This was important because, until that time, Mr. Waldman's interpretation of the plea agreement was that there would be no further prosecutions—period. (ECF 442-4, Affidavit of Robert Waldman); Tr. 1/27/22 p. 59. And he had conveyed that understanding to Mr. Yelizarov. Tr. 1/27/22 p. 59. Thus, Mr. Waldman had led Mr. Yelizarov to believe that the plea agreement provided for no further prosecutions, and Mr. Waldman did not explicitly tell Mr. Yelizarov that the terms of the plea agreement had changed. Informing Mr. Yelizarov of the murder investigation did not amount to also informing him that the government would pursue him for murder even after accepting a plea agreement.

The second occasion the government claims that Mr. Waldman informed Mr. Yelizarov that he would be prosecuted for murder was when Mr. Waldman reviewed the second plea agreement with Mr. Yelizarov. (ECF 510 p. 3). Mr. Waldman testified that when reviewing the second agreement, "I thought it was time to remind him that

there was this investigation going on, that I knew nothing about it." Tr. 1/27/22 p. 52. However, Mr. Waldman's memory on this point was unreliable. He testified he believed he told Mr. Yelizarov there was no deal with respect to the murder, but he could not remember what he actually said. Tr. 1/27/22 p. 52-53.

Mr. Waldman testified that he purposely did not write down much about the murder and therefore had little to aid his memory. Tr. 1/27/22 p. 53. As argued in Mr. Yelizarov's Post-Hearing Memorandum (ECF 506), Mr. Waldman's testimony about this second occasion was contradicted by his affidavit and his earlier testimony that he discussed the murder with Mr. Yelizarov only one time. (ECF 442-4, Affidavit of Robert Waldman); Tr. 1/27/22 p. 45. Mr. Waldman testified:

> Q    After that meeting, during any of your subsequent meetings with him, did he ever mention that murder investigation again?
>
> A    I never raised it.

Tr. 1/27/22 p. 45. As argued in Mr. Yelizarov's post-hearing memorandum, Mr. Waldman's memory regarding the murder investigation was unreliable. (ECF 506, p. 11-12). He changed his testimony regarding the number of times he talked to Mr. Yelizarov about the murder; he was unsure whether it was he or the government who proposed a packaged deal, Tr. 1/27/22 p. 63; and he mis-remembered the nature of Joe Murtha's involvement in the case, Tr. 1/27/22 p. 77. Mr. Waldman emphatically stated in his affidavit and initially in his testimony, that he discussed the murder with

Mr. Yelizarov only one time, during the November 24, 2015 meeting. His contradictory testimony about a second discussion is not credible.

## II.  This Court's credibility findings are entitled to deference.

The government argues that this Court should disbelieve Mr. Yelizarov's testimony, citing cases in which the Court of Appeals upheld a District Court's ruling against the defendant. (ECF 510 p. 4-5). These cases do not, however, stand for a general proposition that a defendant is less credible than other witnesses. Rather, they show that the Court of Appeals gives deference to a District Court's findings of fact and credibility determinations.

The Court of Appeals for the Fourth Circuit has clearly stated that fact-dependent findings of a District Court should be given appropriate deference. *See United States v. Dehlinger*, 740 F.3d 315 (4th Cir. 2014) (citing *Mickens v. Taylor*, 240 F.3d 348, 360 (4th Cir. 2001)). And even greater deference is given to a District Court's findings based on the credibility of witnesses. "When findings are based on determinations regarding the credibility of witnesses . . . we give even greater deference to the trial court's findings." *Id.* (quoting *United States v. Hall*, 664 F.3d 456, 462 (4th Cir. 2012) (internal quotations omitted)). *See also, United States v. Doctor*, 958 F.3d 226 (4th Cir. 2020) (stating "[w]hen factual findings are based on the credibility of witnesses, we give great deference to the district court's determinations") (citing *Hall*, 664 F.3d at 462)).

Here, Mr. Waldman's memory was unreliable and inconsistent. Mr. Yelizarov's testimony, that he was told there would be no further prosecutions, was corroborated.

Mr. Waldman stated in his affidavit and confirmed in his testimony that he believed there would be no further prosecutions. He believed this, even though the plea agreements protected Mr. Yelizarov from future prosecution only as to matters in the statement of facts, having to do with the robbery. Nevertheless, Mr. Waldman communicated his broad interpretation of the limitation on prosecution to Mr. Yelizarov. And there is no credible evidence that Mr. Waldman explicitly and effectively communicated to Mr. Yelizarov a change in the plea agreement's meaning.

## CONCLUSION

Mr. Waldman, knowing that the government had a strong robbery case, believed that a plea agreement would be in Mr. Yelizarov's best interest. Despite Mr. Yelizarov repeatedly stating that he wanted to go trial, Mr. Waldman worked tirelessly to negotiate not one, but two, plea agreements. Mr. Waldman understood that plea negotiations were a process of give and take on both sides. Therefore, even though Mr. Waldman testified that the government had said it was not interested in a combined plea agreement, he asked Mr. Yelizarov if he was interested. Tr. 1/27/22 p. 45. As an experienced negotiator, Mr. Waldman knew that positions on both sides could change. But he did not follow through.

In contrast to the work Mr. Waldman put into negotiating a plea agreement in the robbery case, he did none of this for the murder case. Instead, he led Mr. Yelizarov to believe there would be no further prosecutions. Mr. Yelizarov's reliance on Mr. Waldman's advice was reasonable, given the 30-year sentence he would receive. Mr.

Waldman had advised him that the language limiting further prosecution in first agreement meant there would be no further prosecutions. The second agreement contained nearly identical language.

Mr. Yelizarov was prejudiced because there is a reasonable probability that he would have received a lower sentence in a combined agreement compared to pleading guilty separately. Juxtaposed next to a murder case, there is a reasonable probability that Mr. Yelizarov's robbery case would have resulted in a lower prison term. Barring a favorable outcome in plea negotiations, Mr. Yelizarov would have proceeded to trial. This is supported by his repeated assertions that he wanted to go to trial during his robbery case, and backing out of his first plea agreement. If he had known that he could still be prosecuted for murder, it would have been a rational decision for him go to trial rather than plead guilty to a 30-year sentence.

Accordingly, Mr. Yelizarov's convictions and sentences should be vacated.


Respectfully Submitted,

_____/s/_____
Sicilia C. Englert
Law Office of Sicilia C. Englert, LLC
1800 Diagonal Road, Suite 600
Alexandria, VA 22314
(703) 636-2261

## CERTIFICATE OF SERVICE

I hereby certify that on this day, May 13, 2022, a copy of the foregoing was filed via this Court's Electronic Case Filing system which will deliver notice to all counsel of record, including respondent, Assistant United States Attorney Paul Budlow, Office of the United States Attorney, 36 South Charles Street, Fourth Floor, Baltimore, Maryland, 21201.

_____/s/_____
Sicilia C. Englert